Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/24/2019 09:07 AM CDT

David A. Kaiser, Jr., appellant, v.
Union Pacific Railroad Company,
a corporation, appellee.

___ N.W.2d ___

Filed May 24, 2019.    No. S-18-636.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Federal Acts: Railroads: Claims: Courts.** Substantive issues concerning a claim under the Federal Employers' Liability Act are determined by the provisions of the act and interpretive decisions of the federal courts construing it.

4. **Federal Acts: Railroads: Liability: Negligence: Damages.** Under the Federal Employers' Liability Act, railroad companies are liable in damages to any employee who suffers injury during the course of employment when such injury results in whole or in part due to the railroad's negligence.

5. **Federal Acts: Railroads: Claims: Negligence.** Claims for negligent infliction of emotional distress are cognizable under the Federal Employers' Liability Act.

6. **Negligence: Words and Phrases.** The zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.

7. **Trial: Testimony.** The important considerations in whether inconsistent prior testimony is to be disregarded as a matter of law are whether

the testimony pertains to a vital point, that it is clearly apparent the party has made the change to meet the exigencies of the pending case, and that there is no rational or sufficient explanation for the change in testimony.

8. **Federal Acts: Railroads: Negligence.** An employee cannot recover for negligent infliction of emotional distress under the Federal Employers' Liability Act merely because he or she suffers emotional distress as a result of observing another person's injuries.

9. **Summary Judgment: Proof.** A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial.

10. ____: ____. Once a party moving for summary judgment makes a prima facie case, the burden shifts to the opposing party to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

11. **Summary Judgment: Evidence.** Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment; the evidence must be sufficient to support an inference in the nonmovant's favor without the fact finder engaging in guesswork.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed.

James R. Welsh and Christopher P. Welsh, of Welsh & Welsh, P.C., L.L.O., and M.H. Weinberg, of Weinberg & Weinberg, P.C., L.L.O., for appellant.

Kyle Wallor and Kate Geyer Johnson, of Lamson, Dugan & Murray, L.L.P., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

David A. Kaiser, Jr., sued his former employer, Union Pacific Railroad Company (Union Pacific), under the Federal Employers' Liability Act (FELA). Kaiser alleged that while providing aid to an injured fellow employee, he was exposed to the risk of being run over by a railcar. Kaiser alleged that

Union Pacific's negligence caused him to be exposed to this risk and that, as a result, he suffered emotional distress.

Union Pacific moved for summary judgment. It contended Kaiser could not show that during the incident in question, he suffered a physical injury or was within the "zone of danger," and thus contended he was not entitled to recover for negligent infliction of emotional distress under FELA. Kaiser submitted an affidavit in opposition to Union Pacific's motion for summary judgment, but the district court, citing *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981), disregarded it, finding that it was inconsistent with Kaiser's deposition testimony. The district court went on to grant Union Pacific's motion for summary judgment. Kaiser appeals both the decision to disregard his affidavit and the order granting summary judgment. We affirm.

## BACKGROUND

*July 31, 2012, Accident.*

Kaiser's lawsuit arises out of a workplace accident at Union Pacific's Mason City, Iowa, railyard in the early morning hours of July 31, 2012. At that time, Kaiser was a manager of yard operations at the Mason City railyard. On the evening of July 30 and the morning of July 31, Kaiser was overseeing a team of employees who were preparing railcars for departure on the next outbound train. Those employees included Chris Grey, Tristan Schinzel, and Georgiy Soloviyov. Grey, an engineer, was in the locomotive at the head of a train. Schinzel and Soloviyov were working to couple free railcars onto that train.

At approximately 2 a.m. on July 31, 2012, Kaiser was parked in his vehicle and was listening to the communications of his team on a radio. At that time, Kaiser heard Schinzel yelling that there was an emergency on the track and that "[Soloviyov] is down." Kaiser dialed the 911 emergency dispatch service and ran in the direction of the emergency.

When Kaiser arrived at the scene, he found Soloviyov injured with his head resting on one of the rails. Kaiser

attempted to move Soloviyov and to render aid. Other employees with emergency medical training arrived minutes later, and Kaiser stepped away to give them room. Soloviyov died from his injuries. Kaiser was not struck by a railcar and did not suffer any physical injuries from the incident.

*Kaiser's Lawsuit and
Deposition.*

Kaiser filed a lawsuit against Union Pacific under FELA, alleging negligent infliction of emotional distress. Kaiser alleged that when he was responding to Soloviyov on July 31, 2012, he was at risk of being run over by a railcar. Kaiser alleged that Union Pacific's negligence subjected him to that risk and that he suffered from post-traumatic stress disorder as a result of the incident.

Union Pacific deposed Kaiser on April 20, 2016. Much of the questioning focused on Kaiser's recollection of events after hearing about the emergency on the radio. In particular, Kaiser was asked if Schinzel took steps to secure railcars in the area:

Q [by counsel for Union Pacific]. When you turned to go south, [Schinzel] had the power and the cars attached to the power tied down; correct?

A [by Kaiser]. That's what I told him to do, but I did not verify it.

Q. Okay. Do you have any reason to believe that he did not tie down —

A. No.

Q. — the locomotive and the cars attached to the locomotive that were north of the lantern?

A. No reason to believe that he didn't do what I told him.

Union Pacific's counsel also asked Kaiser whether railcars were moving in the area as he rushed to aid Soloviyov and after he arrived. Kaiser testified that while he was proceeding to Soloviyov's location, he never saw any railcars moving.

He testified that he could hear railcars moving and that the cars he heard moving "would have been around where [he] was at," but that he did not know what railcars were moving. Kaiser testified that as he was providing aid to Soloviyov, he could not tell if railcars were moving because he "wasn't paying attention to that." Kaiser testified that he "could hear movement around [him], but [that his] priority was [Soloviyov]." In addition, Kaiser testified that he did not see any railcars move and that he could not "tell . . . without a doubt that [railcars] moved."

*Union Pacific's First Motion for Summary Judgment.*

Later in 2016, Union Pacific moved for summary judgment. Union Pacific argued that to recover for negligent infliction of emotional distress under FELA, Kaiser was required to prove that he either suffered a physical injury or was within the zone of danger of physical injury. Union Pacific contended that there was no evidence to show that Kaiser met the criteria. Among other exhibits, Union Pacific offered Kaiser's deposition testimony in support of its motion.

Kaiser submitted an affidavit in opposition to the motion. In the affidavit, Kaiser stated that as he was rendering aid to Soloviyov, he was in fear for his own safety. He stated that during that time, while he could not see railcars moving, he could hear railcars moving and feared that moving railcars could cause another accident.

The district court denied the motion for summary judgment. In a written order, it stated that genuine issues of material fact were present as to whether Kaiser was in the zone of danger while rendering aid to Soloviyov.

*Union Pacific's Renewed Motion for Summary Judgment.*

In 2017, Union Pacific filed a renewed motion for summary judgment. Union Pacific relied on the same legal argument

regarding the zone of danger, but offered additional evidence from other Union Pacific employees regarding the status of railcars in Soloviyov's vicinity after the accident.

Union Pacific offered an affidavit of Schinzel in which he stated that shortly after leaving Soloviyov to locate some equipment, he heard railcars impact one another and asked for but heard no response from Soloviyov. At that point, Schinzel moved to Soloviyov's last known location. Upon arriving, he saw Soloviyov on the ground with his head against one of the railcars. Schinzel stated that the railcars he and Soloviyov had been moving had come to rest against the remainder of the train on a descending grade and could not have moved once they came to rest in that position. Schinzel also stated that after Soloviyov's injury, he did not hear or otherwise observe any other cars move in the railyard.

In addition to Schinzel's affidavit, Union Pacific offered affidavits from Grey and other employees working in the railyard that morning. Grey stated that he heard and felt two railcars make contact with the rest of his train, after which he asked Schinzel and Soloviyov about the movement. Grey added that his train could not have exerted force on the railcars Schinzel and Soloviyov were moving and did not move after this incident. Grey also stated that at the time of the incident, he did not see, hear, or feel any other railcars moving in the railyard. Two employees who arrived at the scene to provide aid to Soloviyov stated that at no point did they see, hear, or otherwise observe railcars moving in the yard. Finally, Union Pacific offered an affidavit of an expert in mechanical engineering with a specialty in the railroad industry who, based on his review of locomotive event recorder data, concluded that there was no movement of railcars in the yard after Soloviyov was injured.

Kaiser offered a supplemental affidavit in opposition to Union Pacific's renewed motion for summary judgment. Kaiser's supplemental affidavit reaffirmed his initial affidavit but added that he had "recently reviewed legal documents on

what the 'zone of danger' means" and could state that he was in the zone of danger while providing aid to Soloviyov and that he was aware of it at the time. The supplemental affidavit contained the following additional paragraphs regarding Kaiser's awareness of danger at the time:

4. That on the way to help [Soloviyov,] your affiant radioed . . . Schinzel to lock down the cars, but was fully aware he did not obey this order because he was at the scene instead of locking down the cars, nor did he yell to me that he had locked down the cars.

5. Also at the scene, [Schinzel] would not go under the car to help [Soloviyov,] which was another reason your affiant was aware that the car had not been locked down by [Schinzel] as I had ordered him to do.

6. Knowing that [Schinzel] had not locked down the cars[,] your affiant was well aware that the design of the yard would allow cars to freely roll into the car I was under at the time I was trying to save [Soloviyov].

7. Again I still replay these events in my head and still cannot understand why [Schinzel], a former marine and a member of the Union Pacific family of co-workers, didn't follow my orders and lock down the cars.

The district court granted Union Pacific's second motion for summary judgment. It found that Kaiser's supplemental affidavit was inconsistent with his deposition testimony and disregarded it under *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981). Additionally, the district court found that Kaiser had not offered evidence to refute the evidence offered by Union Pacific that no railcars were moving in the area after Soloviyov's injury.

Kaiser appeals.

### ASSIGNMENTS OF ERROR

Kaiser assigns two errors on appeal: (1) The district court erred in disregarding his supplemental affidavit under *Momsen, supra*, and (2) the district court erred in granting summary judgment in favor of Union Pacific.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Benard v. McDowall, LLC*, 298 Neb. 398, 904 N.W.2d 679 (2017). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

*Governing Law.*

[3,4] Before proceeding to Kaiser's assignments of error, we pause to set forth the general principles of law governing his claim for negligent infliction of emotional distress. Kaiser sued Union Pacific under FELA. Substantive issues concerning a claim under FELA are determined by the provisions of the act and interpretive decisions of the federal courts construing it. *Ballard v. Union Pacific RR. Co.*, 279 Neb. 638, 781 N.W.2d 47 (2010). Under FELA, railroad companies are liable in damages to any employee who suffers injury during the course of employment when such injury results in whole or in part due to the railroad's negligence. *Id.*

[5,6] Claims for negligent infliction of emotional distress are cognizable under FELA. In *Consolidated Rail Corporation v. Gottshall*, 512 U.S. 532, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994), the U.S. Supreme Court held that while such claims are cognizable, the common-law zone of danger test limits the recovery available. "[T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.*, 512 U.S. at 547-48.

The issues raised in this appeal pertain to Kaiser's attempt to show that there was a genuine issue of material fact as to whether he was in immediate risk of physical harm while he was rendering aid to Soloviyov. We proceed to consider those issues now.

*Consideration of Supplemental Affidavit.*

As noted above, the district court disregarded Kaiser's supplemental affidavit in the course of deciding Union Pacific's renewed motion for summary judgment. The district court refused to consider the affidavit under our opinion in *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981). Kaiser argues that the district court improperly applied *Momsen*.

*Momsen* was a medical malpractice action. One of the defendants, a doctor, testified at his deposition that he had not been given the vital signs of the patient and that if he had, he would have gone to the hospital immediately because the vital signs indicated a serious condition. At trial, the doctor testified that he did not go to the hospital because the patient's vital signs had not changed and it was his professional medical judgment that it was not necessary to go to the hospital. When asked how he could reconcile his trial testimony with that given in his deposition, the doctor responded, "'I can't.'" *Id.* at 52, 313 N.W.2d at 212.

[7] At issue on appeal in *Momsen* was whether the doctor's trial testimony should be disregarded. This court held that it should. It explained that the "important considerations" in whether inconsistent prior testimony is to be disregarded as a matter of law are whether the testimony "pertains to a vital point, that it is clearly apparent the party has made the change to meet the exigencies of the pending case, and that there is no rational or sufficient explanation for the change in testimony." *Id.* at 55, 313 N.W.2d at 213.

Kaiser argues that his supplemental affidavit should not have been disregarded under *Momsen* for a number of reasons.

As explained below, we are not persuaded that the district court erred by disregarding the supplemental affidavit.

First, we do not agree with Kaiser's contention that his supplemental affidavit was not "'materially different'" from his deposition testimony and thus not subject to being disregarded under *Momsen*, 210 Neb. at 53, 313 N.W.2d at 213. In his deposition, Kaiser said he had no reason to believe that Schinzel did not tie down the railcars as Kaiser had instructed. Kaiser's supplemental affidavit, on the other hand, consists almost entirely of reasons why Kaiser was purportedly "fully aware" that Schinzel did *not* follow his instructions while at the scene of the accident.

Neither are we convinced by Kaiser's contention that the *Momsen* rule should not have been applied because he offered a sufficient explanation for his change in testimony. Kaiser contends that after "thinking it over," he realized Schinzel did not secure the railcars, and he urges us to find this is a sufficient explanation. Brief for appellant at 14. The supplemental affidavit itself appears to offer a different explanation for the change in testimony. In the supplemental affidavit, Kaiser states that it was prompted by his recent review of legal documents regarding the zone of danger test. In any case, Kaiser has failed to offer a reason why he was not able to recall being "fully aware" that Schinzel had not secured the railcars at his deposition but was able to do so in an affidavit submitted in opposition to a summary judgment motion signed nearly 6 years after the incident.

Finally, we also disagree with Kaiser's claim that the change in testimony was not made to meet the exigencies of litigation. Kaiser signed and offered the supplemental affidavit after Union Pacific offered its evidence in support of its renewed motion for summary judgment. In the supplemental affidavit, Kaiser testified to facts he had not testified to in either his deposition or his initial affidavit in opposition to summary judgment. Kaiser's deposition testimony that he did not have any reason to believe Schinzel did not secure

railcars was helpful to Union Pacific's summary judgment motion. Kaiser obviously hoped statements in his supplemental affidavit that he was actually "fully aware" Schinzel did not do so could help him withstand summary judgment. Additionally, the supplemental affidavit itself tends to confirm that the change in testimony was brought about by the exigencies of litigation. As noted above, Kaiser acknowledged in the supplemental affidavit that its genesis was his review of legal documents regarding the zone of danger test. Under these circumstances, we cannot say the trial court erred by finding that the change in testimony was brought about by the exigencies of litigation.

We find no merit to any of the reasons Kaiser puts forth as to why the district court erred by disregarding his supplemental affidavit under *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981).

*Summary Judgment.*

Kaiser maintains that even if the district court did not err in disregarding his supplemental affidavit, summary judgment for Union Pacific was nonetheless improper. According to Kaiser, other evidence in the summary judgment record established a genuine dispute as to whether he was in the zone of danger while attending to Soloviyov after the accident. Again, we must disagree.

As noted above, the U.S. Supreme Court held in *Consolidated Rail Corporation v. Gottshall*, 512 U.S. 532, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994), that only those plaintiffs who suffer a physical impact or who are placed in immediate risk of physical harm as a result of a defendant's negligence can recover damages for negligent infliction of emotional distress under FELA. Here, the parties agree that Kaiser was not physically struck by a railcar. The dispute centers on whether he was placed in immediate risk of physical harm.

In support of their respective positions, the parties marshal FELA cases applying the zone of danger test. Union Pacific

urges us to consider *Waisonovitz v. Metro North Commuter R.R.*, 550 F. Supp. 2d 293 (D. Conn. 2008), *affirmed* 350 Fed. Appx. 497 (2009). In that case, the operator of a train sued the railroad under FELA for negligent infliction of emotional distress after the train he was operating ran over and killed a coworker. The operator testified that he suffered severe emotional distress when he saw his colleague's body after the train had stopped, but the court granted summary judgment to the railroad because there was no evidence that the operator was ever within the zone of danger. Union Pacific cites other cases to the same effect. See, e.g., *Gottshall v. Consolidated Rail Corp.*, 56 F.3d 530 (3d Cir. 1995).

[8] These cases cited by Union Pacific establish that an employee cannot recover for negligent infliction of emotional distress under FELA merely because he or she suffers emotional distress as a result of observing another person's injuries. Kaiser, however, is not contending that he suffered emotional distress merely because he observed Soloviyov's injuries. He is pursuing this case under the theory that he was in danger of being hit by a moving railcar while he was tending to Soloviyov. And, as Kaiser points out, there is authority recognizing that employees who respond to the injuries of others may find themselves in the zone of danger while doing so. See *Lee v. National Railroad Passenger Corp.*, 791 F. Supp. 2d 550 (S.D. Miss. 2011) (denying summary judgment to railroad in FELA negligent infliction of emotional distress case in which employee responded to crash site and came upon smoke, gas fumes, and downed powerlines).

Even if Kaiser's legal theory is viable, there remains the question of whether there were sufficient facts to support it. Specifically, we must consider whether there was a genuine dispute as to whether Kaiser was actually in immediate risk of being struck by a moving railcar while he was with Soloviyov. We proceed to that question now.

[9] A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence

to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015). Union Pacific clearly made a prima facie case here through the testimony of those at the scene and its expert that no railcars were or could have been moving after Soloviyov was injured.

[10,11] Once the moving party makes a prima facie case, the burden shifts to the opposing party to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment; the evidence must be sufficient to support an inference in the nonmovant's favor without the fact finder engaging in guesswork. *Id.*

Kaiser contends he has produced evidence that creates a genuine issue of material fact. Kaiser directs us to testimony in his deposition that during his time at the Mason City railyard, he became aware of instances in which railcars that had not been properly coupled together "rolled back." Additionally, Kaiser directs our attention to his testimony at his deposition that he could hear railcars moving as he approached and later provided aid to Soloviyov.

Having evaluated the evidence Kaiser claims creates a genuine issue of material fact with our summary judgment standards in mind, we find that it is insufficient to withstand summary judgment. Kaiser's claim that he was aware of previous occasions at which railcars "rolled back" does not, in itself, provide a basis for the finder of fact to conclude, without engaging in guesswork, speculation, conjecture, or choice of possibilities, that railcars were doing so when Kaiser was with Soloviyov. See *Roskop Dairy, supra*.

As for Kaiser's testimony about hearing railcars moving, we reach the same conclusion. Much of Kaiser's testimony about his awareness of the movement of railcars was couched in uncertainty. Union Pacific points out, for example, that Kaiser

admitted he never saw any railcars move, that he was focused on Soloviyov rather than the railcars, that he did not know what railcars he heard moving, and that he could not even say without a doubt that railcars, in fact, moved.

Kaiser's most definitive statements about the movement of railcars were that he heard movement "around [him]" and that the cars he heard moving "would have been around where [he] was at." We understand how one could reasonably infer from this testimony that railcars were moving somewhere in Kaiser's vicinity. However, without some evidence regarding what railcars were moving, where they were located in relation to Kaiser, and what direction and speed they were moving, we do not understand how a finder of fact could conclude, without guessing or speculating, that railcars were moving in a way that subjected Kaiser to an immediate risk of physical harm. Kaiser's statements about hearing railcars moving thus do not create a genuine issue of fact. See *Roskop Dairy, supra*.

Kaiser failed to present evidence from which a finder of fact could determine, without resorting to guesswork or speculation, that he was subjected to an immediate risk of physical harm. The district court thus did not err in granting summary judgment in favor of Union Pacific.

## CONCLUSION

Finding no error in the district court's decision to disregard Kaiser's supplemental affidavit or its decision to grant summary judgment to Union Pacific, we affirm.

AFFIRMED.

MILLER-LERMAN, J., not participating.