DAVID DEAVER, APPELLEE, V. WILLIAM J. HINEL, AN INDIVIDUAL, AND LORAL JOHNSON AND ELNA JOHNSON, HUSBAND AND WIFE, DOING BUSINESS AS THE GRANT TRIBUNE-SENTINEL, APPELLANTS.

391 N.W.2d 128

Filed August 1, 1986.   No. 85-241.

Alan E. Peterson of Cline, Williams, Wright, Johnson & Oldfather, for appellants.

Geoffrey V. Pohl and William P. Mueller of McGinley, Lane, Mueller, O'Donnell & Merritt, P.C., and Lori Zeilinger of Zeilinger and Zeilinger, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and BLUE and FAHRNBRUCH, D. JJ.

WHITE, J.

A jury in Perkins County, Nebraska, returned a verdict on September 11, 1984, in favor of the plaintiff-appellee, David Deaver, against defendants-appellants, William J. Hinel and Loral and Elna Johnson, doing business as the Grant Tribune-Sentinel (Tribune). The jury found for Deaver on two causes of action alleging that certain material printed in the Tribune was libelous as to Deaver. It assessed Deaver's damages at $60,000.

On September 19, 1984, the defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial. The trial court overruled both motions, and the defendants timely appealed to this court.

From 1979 to 1983 David Deaver served in the elected position of Perkins County sheriff. During that time, he was under contract with the city of Grant, Nebraska, to provide law enforcement services for the city. The Perkins County sheriff's office was the only law enforcement agency serving Grant.

Defendants Loral and Elna Johnson hired William Hinel as the managing editor of the Tribune in 1977. The Johnsons are the copublishers of the Tribune, and in addition to this newspaper they publish three other small newspapers in the area. By the terms of his employment, Hinel had responsibility for the writing and editing of articles appearing in the Tribune. The Johnsons neither saw nor proofread the allegedly libelous articles before they were published.

Hinel wrote and published under his byline a regular editorial column entitled "Across the Fence." That the column was an editorial forum is beyond dispute; the record contains a number of earlier columns in which Hinel had expressed opinions about a broad range of matters of local concern in Grant, Nebraska. The column published on August 4, 1982, forms the basis for Deaver's first cause of action. In the column Hinel stated in pertinent part:

> ON THE local scene, it appears that some changes are in order if reports of harassment, incompetency, lawbreaking apparently by law enforcement, continued vandalism, theft and unethical actions are true. It would appear that the reports are true and it also appears that the county's citizens are going to do something about it. The County has become a laughing stock and as such, its people bear the brunt of the hilarity.

One week later, an allegedly libelous letter to the editor appeared in the Tribune. The letter was signed, but the writer asked that the letter be printed anonymously, a request Hinel honored. The letter stated:

To All Citizens of
Perkins County

In view of the recent activities of our law enforcement officials in this county I would like to express a few thoughts and raise a few questions.

Are you, as voting individuals aware that the activities of these people are being seriously questioned and with good cause! It seems now they are committing felonious acts in our communities and yet being left to walk our streets without even a bond being set.

We, as residents of this county, owe it to ourselves and the children of this county to see that matters are changed. Now is the time to do it before something else happens. No one is SAFE! Next time it could happen to one of us, a loved family member or friend!

I as a concerned citizen find it very hard to stomach seeing these officials (?) in question still fraternizing in public with our present Sheriff and County Attorney. It brings the question to mind of the extent of their involvement with incidents recently reported. And yet they released a news item to the Keith County News about fairness for a trial. Well, don't you question their basis for fairness? What about a little fairness for the victim instead of the alleged criminal? It appears they condone if you're a law enforcement officer you can get away with anything maybe even attempted murder.

In view of these conditions, we, the voting public, are the only ones that can change things. If that requires starting with replacement of our commissioners, sheriff, and county attorney let's do it! Aren't they all a bit overpaid in view of things happening here? Are they still paying the officer suspended for assault? We owe it to each other as neighbors and friends to find these answers and take action to bring about the much needed changes!!

Let's be united so we can all say once again that we're proud to be from Perkins County!

A VERY concerned Citizen!

A few months after the articles were printed, Deaver was defeated for reelection by James Crown, a former deputy

sheriff whom Deaver had fired. Shortly thereafter, Deaver filed this action, claiming that the allegations in the column and letter were about him, were false, and were made with actual malice as defined in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). The defendants countered that the statements were true and even if they were not, they were not of and concerning Deaver and had not been published with actual malice. The trial court overruled the defendants' motion for summary judgment, and the case proceeded to trial and resulted in a jury verdict for Deaver.

A threshold question in this case is our standard of review on appeal. That Deaver is a public official as defined in *Rosenblatt v. Baer*, 383 U.S. 75, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966), is undisputed. See, also, *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S. Ct. 2675, 61 L. Ed. 2d 411 (1979). The U.S. Supreme Court has recently reaffirmed the rule that public official libel cases warrant heightened judicial scrutiny on appeal. In *Bose Corp. v. Consumers Union of U. S., Inc.*, 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984), *reh'g denied* 467 U.S. 1267, 104 S. Ct. 3561, 82 L. Ed. 2d 864, the Court found that where the standards of *New York Times Co. v. Sullivan, supra,* apply, "[a]ppellate judges in such a case must exercise independent judgment and determine whether the record establishes actual malice with convincing clarity." 466 U.S. at 514. The appellate court's independent examination of the record helps assure that the judgment does not constitute a " 'forbidden intrusion of the field of free expression.' " *Bose Corp., supra* at 499 (quoting *New York Times Co. v. Sullivan*). Further, the rule of independent appellate review "assigns to judges a constitutional responsibility that cannot be delegated to the trier of fact, whether the factfinding function be performed . . . by a jury or by a trial judge." 466 U.S. at 501.

The initial subject of our independent review is Deaver's evidence, which must establish with convincing clarity that the defendants acted with actual malice when they published a known or reckless falsehood about him.

This case is one of federal constitutional law, the analysis and outcome controlled by *New York Times Co. v. Sullivan* and its progeny. Neither party relies on or cites Neb. Rev. Stat.

§ 25-840 (Reissue 1985), which states that

the defendant may allege the truth of the matter charged as defamatory, prove the same and any mitigating circumstances to reduce the amount of damages, or prove either. The truth in itself and alone shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication.

The issue not squarely before us, we do not decide the effect, if any, of this statute on public official libel lawsuits or the effect, if any, of *New York Times Co. v. Sullivan* on the statute.

In *New York Times Co. v. Sullivan*, the Court held for the first time that constitutional protections for speech and press limit state powers to award damages in libel actions brought by public officials against critics of official conduct.

Sullivan, one of three elected commissioners of Montgomery, Alabama, brought the action against four individuals and the New York Times Co., claiming he had been libeled in two paragraphs of a full-page advertisement. Even though he was not mentioned by name in the advertisement, Sullivan recovered $500,000 damages based on a state legal doctrine whereby criticism of the Montgomery Police Department was transmuted to criticism of him as the official in charge. The state court instructed the jury that such criticism was libel per se. Under such instruction Sullivan need only prove that the statement was false and that it referred to him.

Reversing the Alabama Supreme Court's judgment for Sullivan, Justice Brennan's majority opinion reasoned that a state must safeguard freedom of speech and press in its libel laws as required by the 1st amendment as applied to the states through the 14th amendment. This first amendment protection exists against the background of "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). Neither erroneous statement nor injury to official reputation forfeits the first amendment protection, which

should provide "breathing space" for freedom of expression.

The Court drew an analogy to the Sedition Act of 1798, an early attempt to prohibit criticism of the government. The Court noted that state statutes punishing libel of public officials must likewise be restricted by the first amendment, for a broad libel law serving to protect public officials from criticism is closely analogous to the Sedition Act. The Alabama statute did provide for a defense of truth, but given the importance of safeguarding the "breathing space" necessary so as not to discourage valid criticism of public officials, a "defense for erroneous statements honestly made" was essential. 376 U.S. at 278.

Given this general policy, the Court laid out the standard for recovery of any alleged defamatory falsehood relating to a public official's conduct. First, the plaintiff government official must prove that the statement was false. Citizens are certainly free to disclose truthful information about their officials. Second, the defamatory falsehood must relate to the individual plaintiff government official; no generalized criticism of government policy can be punished, for that would be akin to a sedition action. Finally, and most significantly, for there to be a defamation action, the plaintiff must allege and prove that the defendant made the defamatory statements with actual malice. See, generally, 3 R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law: Substance and Procedure § 20.33 (1986).

On the issue of actual malice, the Court said: "The constitutional guarantees require, we think, a federal rule that prohibits a *public official* from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with *'actual malice'*." (Emphasis supplied.) 376 U.S. at 279-80. The Court defined actual malice as "knowledge that [the defamation that was published] was false or with reckless disregard of whether it was false or not." *Id.* at 280. While the Court used the word "malice," it was not referring to the common-law libel meaning of malice as hatefulness or ill will; rather, from its definition, the Court meant "scienter." W. Prosser, Handbook of the Law of Torts, *Defamation* § 113 (4th ed. 1971); Restatement

(Second) of Torts § 580A, comment *d.* (1977). See, also, *Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 95 S. Ct. 465, 42 L. Ed. 2d 419 (1974).

We believe that Deaver has not met the threshold burden of proving that the statements published in the Tribune were false. A public figure libel plaintiff bears the burden of proving the falsity of the published statements by clear and convincing evidence. *Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976), *cert. denied* 429 U.S. 1062, 97 S. Ct. 785, 50 L. Ed. 2d 777 (1977); *Sharon v. Time, Inc.*, 609 F. Supp. 1291 (S.D.N.Y. 1984). The statements challenged by Deaver as libelous were those in the column and letter suggesting that Perkins County law enforcement personnel were guilty of harassment, lawbreaking, and unethical behavior. Deaver claims that these statements are patently false allegations about him. However, Deaver himself admits the truth of the statements with respect to his associates, and other witnesses testified that the incidents generally referred to in the articles had indeed occurred.

For example, Deaver admitted that a felony charge was filed in July 1982 against his deputy, Robert Napierkowski, for placing a drug, "Rompun," in the coffee of one of the sheriff's dispatchers on June 2, 1982. Deaver also admitted that he fired Deputy Mike Kohl after receiving reports that Kohl wrote insufficient funds checks while in uniform. Although he was not prosecuted, Kohl was sued and judgments were obtained against him. Deaver fired a third deputy, Dan Koss, after he learned that the deputy had assaulted a motorist who had run a stop sign. Deaver admitted not only the truth of these incidents but also that the felonious acts referred to in the column and letter might be referring to his deputies' unlawful behavior.

With respect to other statements in the Tribune, Deaver also admitted that another deputy, Steven Brockopp, had been absent without permission from his duty station in Venango, Nebraska, on the night of June 2, 1982, when a burglary had occurred there. Brockopp apparently was in Julesburg, Colorado, with a Perkins County patrol car, at the time without explanation or excuse, and Deaver subsequently fired him on June 15, 1982. Deaver admitted that use of patrol cars for personal activities had been a recurring problem since he

became sheriff. He also testified that Brockopp had been charged with assault after he was fired because he "broke back into the courthouse and came up here and roughed up a dispatcher."

Deputy James Crown, Deaver's successful challenger in the 1982 election, was also dismissed by Deaver after Crown apparently mishandled certain evidence in the investigation of Deputy Napierkowski. Crown was fired after the articles appeared in the Tribune, but Deaver testified that Crown had mishandled the evidence before publication. Prior to his dismissal, Crown had also been disciplined by Deaver for failing to report that an employee had revealed at a party the existence of an undercover drug operation.

Besides Deaver's admissions, witnesses James Crown, Gregory Beal, and Deloris Weiland each testified to various incidents of threats, harassment, and outright crimes of certain deputy sheriffs. Crown testified that he informed Deaver about comments of Brockopp after Brockopp threatened, following a near-miss accident with a pedestrian, to kill a second pedestrian so as to eliminate any witnesses to an accident. Gregory Beal, the special prosecutor in the Napierkowski affair, testified that his independent investigation, with the aid of the State Patrol, had revealed that the deputy had, on an earlier occasion, tried to procure drugs for another victim's coffee and that he had informed Deaver of Napierkowski's behavior. Deloris Weiland testified about a late-night incident involving two deputies, wherein she was stopped and questioned. She reported the "harassment" to Sheriff Deaver, who assured her he would look into the matter.

William Hinel testified that he had these and other similar reports in mind when he published the column and the letter in the Tribune. The record contains a thorough recitation of Hinel's recollection of the events, recollections that were both first and second hand. To Hinel, it "appear[ed] that . . . the reports [were] true" because "some of them happened to me, my family, and some of them I knew what happened from talking to people, and because there were, some of them, it just appeared to me in my opinion they must true or there wouldn't be that many and that many people involved."

Not only does Deaver's evidence fail to establish with convincing clarity that the published statements were false, it also is incapable of supporting the jury's finding that the statements were made "of and concerning" Deaver. Deaver relies on the words in the column and letter and the testimony of witnesses to establish a direct connection between the statements and him.

In his column, Hinel makes no reference to Deaver, either by name or by official position. Rather, he uses the general term "law enforcement" when he refers to reports of lawbreaking, harassment, and incompetence. The letter also employs the term "law enforcement" and makes reference to "our present Sheriff and County Attorney." However, the reference must be read in context: "I as a concerned citizen find it very hard to stomach seeing these officials (?) . . . fraternizing in public *with our present Sheriff and County Attorney*." (Emphasis supplied.) This sentence does not cast Deaver as a wrongdoer; indeed, it suggests at most an association between the former sheriff and those who allegedly committed the acts complained of.

*New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), directly controls this issue. In that case Sullivan made essentially the same argument that Deaver makes here: he argued that as a police commissioner he had overall responsibility for the police department, and, therefore, criticism directed generally at the department was perforce directed specifically and, in that case, libelously at him. The Alabama Supreme Court agreed with Sullivan:

> We think it common knowledge that the average person knows that municipal agents, such as police and firemen, and others, are under the control and direction of the city governing body, and more particularly under the direction and control of a single commissioner. In measuring the performance or deficiencies of such groups, praise or criticism is usually attached to the official in complete control of the body.

*New York Times Company v. Sullivan*, 273 Ala. 656, 674-75, 144 So. 2d 25, 39 (1962).

The U.S. Supreme Court disagreed with Sullivan and the

Alabama court. Justice Brennan first observed that the challenged statements were general criticisms of police activities: "Although the statements may be taken as referring to the police, they did not on their face make even an oblique reference to [Sullivan] as an individual." 376 U.S. at 289. "[I]t is plain that these statements could not reasonably be read as accusing [Sullivan] of *personal involvement* in the acts in question." (Emphasis supplied.) *Id.* at 288-89.

Because the statements did not facially refer to Sullivan, the Court determined that "[s]upport for the asserted reference must, therefore, be sought in the testimony of [Sullivan's] witnesses." *Id.* at 289. The Court held that "beyond the bare fact that [Sullivan] was in overall charge of the Police Department and thus bore official responsibility for police conduct," *id.*, Sullivan had failed to establish through his witnesses any basis for the belief that Sullivan himself was attacked in the publication.

> [T]o the extent that some of the witnesses thought respondent to have been charged with ordering or approving the conduct or otherwise being personally involved in it, they based this notion not on any statements in the advertisement, and not on any evidence that he had in fact been so involved, but solely on the unsupported assumption that, because of his official position, he must have been.

*Id.* The Court explained why Sullivan's evidence was constitutionally deficient:

> The present proposition would sidestep this obstacle by transmuting criticism of government, however impersonal it may seem on its face, into personal criticism, and hence potential libel, of the officials of whom the government is composed. There is no legal alchemy by which a State may thus create the cause of action that would otherwise be denied for a publication which, as respondent himself said of the advertisement, "reflects not only on me but on the other Commissioners and the community." Raising as it does the possibility that a good-faith critic of government will be penalized for his criticism, the proposition relied on by the Alabama courts

strikes at the very center of the constitutionally protected area of free expression. We hold that such a proposition may not constitutionally be utilized to establish that an otherwise impersonal attack on governmental operations was a libel of an official responsible for those operations. *Id*. at 292. See, also, *Rosenblatt v. Baer*, 383 U.S. 75, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966) (reversing jury verdict due to insufficient evidence that published statements were of and concerning plaintiff).

Deaver argues that the statements in the Tribune necessarily concerned him because he was the only law enforcement official in Perkins County. Clearly this is not the case, since the sheriff's department employed at one time at least four deputy sheriffs in addition to Deaver. There is also testimony in the record that "law enforcement" could refer to entities such as the county attorney and personnel of the courts. Deaver also claims that certain testimony established conclusively that the statements about law enforcement officials were specific attacks on him. Our independent review of the record leads us to a different conclusion. Witness Gregory Beal testified that statements about law enforcement in Perkins County perforce referred to "the sheriff's office." This testimony fails even to establish, as was the case in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), that reference to law enforcement was reference to those in charge. Even if it had established such a connection, the Supreme Court specifically rejected such testimony as the clear and convincing proof required to establish that statements are of and concerning the plaintiff.

Deaver also relies on the testimony of LaVeta Short to establish that the Tribune's statements referred to him. Witness Short testified that, to her, Hinel's August 4 column was "prosecuting Dave." While this may be evidence of one person's perception of a connection between the statements and the plaintiff, it is constitutionally insufficient to establish that the challenged material clearly referred to Deaver. Finally, Deaver, like Sullivan, testified that he understood the statements to refer to him simply because he was responsible for law enforcement in Perkins County at the time. As the Court did in

*New York Times Co. v. Sullivan*, we conclude that this evidence is insufficient to support the jury's finding that the statements were "of and concerning" Deaver.

In light of this record we cannot say Deaver has established with convincing clarity that the statements in the Tribune were false with respect to him. To be sure, the observations in the column and the letter seem to be accurate, general accounts of the activities of a number of Perkins County law enforcement personnel. Beyond stating the truth, the column and letter merely constituted fair comment on governmental activity, protected speech under the first amendment. See, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974); *Rosenblatt v. Baer*, 383 U.S. 75, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966).

Accordingly, we reverse the judgment of the trial court overruling the defendants' motions for judgment notwithstanding the verdict or for a new trial and direct the trial court to dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.