Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/09/2019 08:06 AM CDT

- 855 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

JB & Associates, Inc., a Nebraska corporation,
et al., appellants, v. Nebraska Cancer
Coalition et al., appellees.

___ N.W.2d ___

Filed August 9, 2019.    No. S-18-719.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

4. **Libel and Slander: Negligence.** A defamation claim has four elements: (1) a false and defamatory statement concerning the claimant, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

5. **Libel and Slander.** Under a defamation claim, the element which requires that the statement must be false and defamatory concerning the claimant is more precisely stated as "the statement must be false and defamatory of and concerning the claimant."

6. **Libel and Slander: Words and Phrases.** A communication is defamatory if it tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.

- 856 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

7. **Libel and Slander: Proof.** In order to meet the "of and concerning" requirement for a group libel claim, a claimant must show either (1) the group or class is so small that the matter can reasonably be understood to refer to the claimant or (2) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

8. **Libel and Slander.** To determine whether a statement is defamatory and concerning a claimant, a court must consider the circumstances under which the publication of the communication was made, the character of the audience and its relationship to the subject of the publication, and the effect the publication may reasonably have had upon such audience.

9. ____. In a defamation claim, the recipient of the offending statement must understand it as intended to refer to the claimant, but whether the speaker intended such reference is immaterial.

10. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

11. **Statutes: Intent.** In determining the meaning of statutory language, its ordinary and grammatical construction is to be followed, unless an intent appears to the contrary or unless, by following such construction, the intended effect of the provisions would apparently be impaired.

12. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

13. ____. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

14. **Libel and Slander.** A product disparagement claim under Neb. Rev. Stat. § 87-302 (Cum. Supp. 2018) requires that the offending statements be "of and concerning" a claimant's goods or services.

15. ____. Determining whether a statement is "of and concerning" a claimant's goods or services in a product disparagement claim requires the consideration of the circumstances surrounding the statement but also requires more than general, industry-wide allegations.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

Gene Summerlin, Brent A. Meyer, and Quinn R. Eaton, of Husch Blackwell, L.L.P., for appellants.

- 857 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

John C. Aisenbrey and Robin K. Carlson, of Stinson, L.L.P., and Patrick R. Turner, of Dvorak Law Group, L.L.C., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Appellants, JB & Associates, Inc., and several other tanning salons, filed an appeal of the district court's order dismissing their claims of defamation and product disparagement under Nebraska's Uniform Deceptive Trade Practices Act (UDTPA).[1] Appellants challenge the court's determination that the UDTPA requires reference to a specific product of a claimant. Appellants further contend the court failed to consider the facts in the light most favorable to their claims and erred in finding there was no genuine dispute of material fact in determining appellees' statements were not disparaging to appellants' businesses, products, or services and were not defamatorily "of and concerning" appellants. For the reasons set forth herein, we affirm.

BACKGROUND

Appellants are tanning salons that, from 2015 to 2017, allegedly accounted for between 68 to 71 percent of the known tanning salons in the Omaha and Lincoln, Nebraska, markets and approximately 14 to 18 percent of all the entities in Nebraska that provide indoor tanning services.

Appellees engage in activities related to cancer education and prevention. In 2014, appellee Nebraska Cancer Coalition (NCC), led by Drs. Alan G. Thorson and David J. Watts, started a campaign named "The Bed is Dead" to educate the public on the dangers of indoor tanning. NCC maintains for this campaign the website "www.thebedisdead.org." When

---

[1] See Neb. Rev. Stat. §§ 87-301 to 87-306 (Reissue 2014 & Cum. Supp. 2018).

- 858 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

the website went live in March 2014, the following statements were included on its "LEARN THE FACTS ABOUT TANNING" page:

Statement 1: "Tanning Causes More Cancers than Cigarettes[.]"

Statement 2: "Young women are hit hardest. New cases of malignant melanoma have soared 8-FOLD in young women since 1970, TWICE AS FAST as in young men!"

Statement 3: "Tanning before age 35 raises your risk of melanoma by nearly 60%."

Statement 4: "Tanning beds have been proven to cause skin cancer."

Statement 5: "Your skin remembers EACH tanning session. Just one indoor tanning session increases your risk of melanoma by 20% and each additional use during the same year boosts risk by another 2%."

Statement 6: "Malignant melanoma is now the most common cancer in young adults aged 25-29 years, second most common in young women aged 30-34 years and in teenagers."

Statement 7: "Ultraviolet radiation and UV tanning devices are rated by the Food and Drug Administration (FDA) and the World Health Organization (WHO), among other agencies, as carcinogenic to humans (type-1 carcinogens), in the highest risk category alongside arsenic, radon, tobacco, and asbestos."

Statement 8: "One person dies of melanoma every hour in the U.S."

Statement 9: "Malignant melanoma is increasing more rapidly than any other cancer."

Statement 10: "Tanning is addictive. One study produced withdrawal symptoms in frequent tanners with narcotic antagonists such as are used in emergency rooms. Studies find higher rates of alcohol, tobacco, and drug use in females that tan."

- 859 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

Statement 11: "Of melanoma cases among patients under 30 who had tanned indoors, 76 percent were attributable to tanning bed use in a recent well-designed and conducted study."

Statement 12: "Vitamin D is important, but exposure to UV more than about 10 minutes actually starts to break down the pre-vitamin D in the skin."

Statement 13: "There is no such thing as a 'safe tan.' Any color the skin develops is a direct result of DNA damage to the skin cells."

Additionally, under a page titled "FACTS," the website stated:

. . . Tanning facilities do not require a license to operate in Nebraska.

. . . In 2010, the U.S. Federal Trade Commission ordered the Indoor Tanning Association to cease false advertising claims: 1) that tanning is safe or healthy, 2) that tanning poses no danger, and 3) that tanning does not increase risk of skin cancer.

. . . Yet, a congressional investigative report two years later found:

. . . Tanning Salons market their product to teenagers.

. . . Nine out of ten salons DENIED KNOWN RISKS of indoor tanning.

Under a "TOOLKIT" page on the website, NCC also encouraged visitors to promote the page "at your organization or school."

NCC promoted the website in publications, social media, and advertisements. NCC also utilized dermatologist partners who visited Omaha schools and encouraged students to go to the website. In the other publications, NCC made the following additional statements to support the campaign:

Statement 14: "Evidence shows that exposure to artificial UV light before age 30 increases a person's risk of melanoma by 75%."

Statement 15: "In a recent study, 76% of melanomas diagnosed in people aged 18-29 were caused by indoor tanning."

- 860 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

Statement 16: "Artificial sunlight — the kind found in tanning beds — . . . carries a significantly higher risk of skin cancer."

Statement 17: "Indoor tanning is thought to cause 170,000 skin cancers annually."

Statement 18: "Worse, to get a fast tan, many tanning beds emit ultraviolet (UV) radiation that far exceeds UV in natural sunlight. Human evolution has not equipped even tanned skin to withstand such extreme UV exposures without injury."

Statement 19: "You may be thinking that just a few indoor tanning sessions won't hurt — that they can't really be that harmful. But science shows that indoor tanning is much more dangerous than previously assumed, especially for young people. A single indoor UV tanning exposure as a young person is linked to an alarming 34-59 percent increase in the risk of melanoma."

Statement 20: "Not only that, but the skin remembers every single tanning session. Melanoma risk increases almost 2 percent for each additional indoor tanning exposure in a given year."

Statement 21: "Melanoma is now the number one cancer in the U.S. among young adults aged 25-29 years, and is one of the most common cancers of teenagers."

Statement 22: "Young women make up 70 percent of the 1 million people who tan indoors every day in the United States. So it is not surprising that a Mayo Clinic study showed that in recent years melanoma has increased twice as fast in young women as in young men."

According to managing staff and employees of appellants, customers asked questions about appellants' facilities and the dangers of indoor training after visiting appellees' The Bed is Dead website.

In July 2015, based upon the statements from the website and supporting publications quoted above, appellants filed a complaint against appellees. This complaint alleged (1)

- 861 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

violations of the UDTPA for deceptive trade practices and product disparagement and (2) defamation for making statements designed to destroy appellants' businesses, reputations, and livelihood.

Appellees submitted a motion for summary judgment in January 2018 seeking dismissal of these claims. In the motion, appellees argued that there were no genuine issues of material fact and that appellees were entitled to judgment as a matter of law.

Following a hearing, the district court granted appellees' motion and dismissed appellants' claims. In addressing the deceptive trade practices claim, the court noted the UDTPA states that "[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she . . . [d]isparages the goods, services, or business of another by false or misleading representation of fact."[2] The court determined this language requires reference to a "specific product." Because the statements on which appellants' claims are based address the tanning bed industry as a whole instead of appellants' specific products, the court found appellants failed to offer evidence that NCC's statements "'disparaged the goods, services, or business of another,'" given the broad application of the statements and the generality with which the statements discuss the potential dangers of tanning.

On the defamation claim, the court listed the elements to prove defamation as (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. The court held that appellants failed to meet the first element and prove the statements were "'of [and] concerning'" appellants. In so holding, the

---

[2] § 87-302(a)(9).

- 862 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

court referenced the Restatement (Second) of Torts[3] and its explanation that a group libel claim can meet the "of and concerning" requirement if either the group is so small that the matter can reasonably be understood to refer to the member or the circumstances of publication reasonably give rise to the conclusion that there is a particular reference to the member. Because the court found appellees' statements did not specifically reference appellants or their salons and instead were directed at tanning beds, tanning devices, and indoor tanning generally, the court determined appellants failed to show either option under the test for a group libel claim to meet the "of and concerning" requirement.

## ASSIGNMENTS OF ERROR

Appellants assign, restated and reordered, that the district court erred in dismissing appellants' claims of defamation and product disparagement by (1) finding the evidence did not raise a genuine dispute of material fact on whether appellees' statements were "of and concerning" appellants for purposes of defamation; (2) holding that a UDTPA claim for deceptive trade practices and product disparagement requires a statement to reference a specific product of appellants; and (3) finding the evidence did not raise a genuine dispute of material fact on whether appellees' statements disparaged appellants' businesses, products, or services.

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4]

---

[3] See Restatement (Second) of Torts § 564A (1977).

[4] *Kaiser v. Union Pacific RR. Co., ante*. p. 193, 927 N.W.2d 808 (2019).

- 863 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[5]

[3] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[6]

## ANALYSIS

### Defamation

We first address appellants' assignments concerning the dismissal of their defamation claim and the court's finding that there was no genuine dispute of material fact. Specifically, appellants claim the circumstances surrounding the NCC's statements indicate that they were concerning appellants.

[4-6] A defamation claim has four elements: (1) a false and defamatory statement concerning the claimant, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.[7] The element which requires that the statement must be false and defamatory concerning the claimant is more precisely stated as "the statement must be false and defamatory of and concerning the claimant."[8] A communication is defamatory if it tends

---

[5] Id.

[6] Estermann v. Bose, 296 Neb. 228, 892 N.W.2d 857 (2017).

[7] Steinhausen v. HomeServices of Neb., 289 Neb. 927, 857 N.W.2d 816 (2015).

[8] See, Rosenblatt v. Baer, 383 U.S. 75, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); Deaver v. Hinel, 223 Neb. 529, 391 N.W.2d 128 (1986).

- 864 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.[9] In the instant case, the district court determined appellees' statements did not meet the "of and concerning" requirement of the first element— that the statements were false and defamatory and concerning the claimant.

[7] Appellants' defamation claim is a group libel claim in that the offending statements concern a large group or class of persons or businesses. Under the Restatement (Second) of Torts, in order to meet the "of and concerning" requirement for a group libel claim, a claimant must show either (1) the group or class is so small that the matter can reasonably be understood to refer to the claimant or (2) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.[10] Appellants allege the statements fall under the second option.

[8,9] To determine whether a statement is defamatory and concerning a claimant, a court must consider the circumstances under which the publication of the communication was made, the character of the audience and its relationship to the subject of the publication, and the effect the publication may reasonably have had upon such audience.[11] The recipient of the offending statement must understand it as intended to refer to the claimant, but whether the speaker intended such reference is immaterial.[12]

Here, there were insufficient facts to show recipients of NCC's statements understood or should have understood the statements referred or were intended to refer to appellants. The offending statements did not name or mention any

---

[9] See *id.*

[10] Restatement, *supra* note 3.

[11] *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991). See, also, *Moats v. Republican Party of Neb.*, 281 Neb. 411, 796 N.W.2d 584 (2011).

[12] See Restatement (Second) of Torts § 564, comment *a* (1977).

- 865 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

of appellants, and in fact, none of the statements addressed "tanning salons" specifically. Instead, these allegedly defamatory statements addressed tanning and indoor tanning generally.

Additionally, nothing in the content surrounding NCC's statements mentioned appellants or implied that the statements were targeted at appellants. The Bed is Dead campaign was statewide and was not limited to the Omaha and Lincoln areas. The website is available to anyone in Nebraska and elsewhere. Additionally, the offending statements could apply to anyone tanning indoors or outdoors irrespective of their state residency. Regardless of what internal documents said, which were unavailable to recipients of NCC's statements, nothing in the surrounding content implied NCC was targeting appellants' tanning salons, specific locations in the state, or appellants' specific customer base.

Appellants contend that affidavits of their managing staff and employees demonstrate that customers understood NCC's statements to refer to appellants. Specifically, these affidavits asserted customers asked questions about appellants' facilities and the dangers of indoor tanning after visiting appellees' The Bed is Dead website. However, the affidavits do not state that the customers told them they believed the statements were about appellants specifically and instead indicate the customers thought the statements were aimed at indoor tanning in general. Additionally, contrary to appellants' argument, NCC's utilizing dermatological partners who visited Omaha schools and encouraged students to go to the website also does not indicate the recipients of the offending statements would have understood the statements to be targeted at appellants.

Based upon all of the above, there were no genuine disputes as to any material facts on appellants' defamation claim and appellees were entitled to judgment as a matter of law. Thus, the district court did not err in granting appellees' motion and dismissing appellants' defamation claim.

- 866 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

### Deceptive Trade Practices
### Under UDTPA

Appellants' other assignments claim the district court erred in requiring the offending statements reference a specific product or service to be actionable under the UDTPA and finding that there was no genuine dispute as to any material facts and that appellees were entitled to judgment as a matter of law.

Section 87-302(a)(9) states that "[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she . . . [d]isparages the goods, services, or business of another by false or misleading representation of fact." Section 87-303(a) describes that a person likely to be damaged by the alleged deceptive trade practice may seek an injunction against the person disparaging the petitioner's goods, services, or business. Section 87-303(a) further explains that "[p]roof of monetary damage, loss of profits, or intent to deceive is not required."

Appellants and appellees offer different interpretations for § 87-302(a)(9). Appellants argue that the plain language of § 87-302(a)(9) only requires the offending statement result in disparagement of the goods, services, or business of a claimant and that there is no requirement regarding a level of specificity to identify the claimant within the statement. Appellees, in turn, argue the use of "of another" requires that any statement must be tied to the specific goods, services, or business of the claimant and go beyond a general proposition applying to all goods, services, or business within an industry.

[10-13] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[13] A statute's ordinary and grammatical construction is to be followed, unless an intent appears to the contrary or unless, by following such

---

[13] *In re Estate of Fuchs*, 297 Neb. 667, 900 N.W.2d 896 (2017).

- 867 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

construction, the intended effect of the provisions would apparently be impaired.[14] It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[15] A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[16]

The word "disparage" is defined by Black's Law Dictionary as "1. To speak slightingly of; to criticize (someone or something) in a way showing that one considers the subject of discussion neither good nor important. 2. To degrade in estimation by disrespectful or sneering treatment."[17] While "of another" is not defined under the statute, the plain language of § 87-302(a)(9) and the definition of "disparage" require that the statement be specific enough to the claimant's goods, services, or business that the statement could actually be understood to concern those items and it could be determined whether the statement represented false or misleading facts.

Under common-law defamation, trade libel, and product disparagement cases, other jurisdictions have similarly required libelous statements to concern a claimant's goods and services.[18] These jurisdictions have held that though the offending statements need not explicitly refer to another's product, the statements must be "of and concerning" a claimant's products

---

[14] *Patterson v. Metropolitan Util. Dist.*, 302 Neb. 442, 923 N.W.2d 717 (2019).

[15] *In re Estate of Fuchs, supra* note 13.

[16] *Patterson, supra* note 14.

[17] Black's Law Dictionary 570 (10th ed. 2014).

[18] *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186 (3d Cir. 1998); *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 773 A.2d 906 (2001); *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 984 N.E.2d 755 (2013); *Wolfe v. Gooding & Company, Inc.*, No. 14-CV-4728, 2017 WL 3977920 (D.N.J. Sept. 11, 2017) (unpublished opinion).

in that a reasonable person who saw or read the statements and was familiar with the circumstances reasonably believed that the statements referred to the claimant's specific products or services.[19] Such holdings are relevant to our interpretation of product disparagement under § 87-302, because the Legislature's use of the "of another" language indicates an incorporation of the same "of and concerning" element present in common-law actions aimed at unfair and deceptive trade practices. While we reach this conclusion regarding the meaning of the "of another" language independent of legislative history, we note that contrary to appellants' suggestion that such an interpretation conflicts with the reasons motivating the enactment of this provision, legislative history suggests that the enactment of the UDTPA was not intended to vary from existing common-law actions of unfair and deceptive trade practices.[20]

Additionally, the Seventh Circuit Court of Appeals, utilizing Illinois law, applied the "of and concerning" requirement to the Uniform Deceptive Trade Practices Act model, similar to § 87-302. In *Brown & Williamson Tobacco Corp. v. Jacobson*,[21] the Seventh Circuit addressed a product disparagement claim under the Illinois statute brought by a cigarette manufacturer for statements made during a newscast regarding cigarettes. In dismissing the disparagement claim and holding that disparagement under the Illinois statute requires more than general, industry-wide statements, the court reasoned, "The [defendant's] broadcast does not suggest that [the plaintiff's] cigarettes are defective, or any more unhealthful than other brands of cigarettes . . . ."[22] This holding is relevant to our

---

[19] See *id.*

[20] Judiciary Committee Hearing, L.B. 641, 80th Leg., 9-11 (Apr. 14, 1969).

[21] *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262 (7th Cir. 1983).

[22] *Id.* at 274.

- 869 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

analysis, because the Legislature expressly provided that the UDTPA "shall be construed to effectuate its general purpose to make uniform the law of those states which enact" the Uniform Deceptive Trade Practices Act model.[23]

[14,15] Accordingly, considering the use of "of another" in § 87-302(a)(9), the definition of "disparage," the requirements of product disparagement claims under the common law, and interpretation of disparagement under the Uniform Deceptive Trade Practices Act model, we hold that a product disparagement claim under § 87-302 requires that the offending statements be "of and concerning" a claimant's goods or services. Determining whether a statement is "of and concerning" a claimant's goods or services requires the consideration of the circumstances surrounding the statement but also requires more than general, industry-wide allegations.[24]

Appellants cite to *Auvil v. CBS 60 Minutes*[25] for their proposition that a general reference to goods and services is sufficient to disparage a business' specific goods and services under § 87-302. However, the *Auvil* decision is not at odds with our holding detailed above. The court in *Auvil* found that a statement directed at a chemical used in conjunction with apple farming and accompanying pictures of red apples was sufficient to identify that a television segment was directed at Washington State apple growers to bring a disparagement claim.[26] The court based its decision on the proposition that it was commonly known "throughout the country, if not the world, that Washington is the prime producer of red apples."[27] The court in *Auvil* looked at the circumstances surrounding

---

[23] Neb. Rev. Stat. § 87-305 (Reissue 2014).

[24] See, *Brown & Williamson Tobacco Corp., supra* note 21; *Moats, supra* note 11; *Matheson, supra* note 11.

[25] *Auvil v. CBS 60 Minutes*, 800 F. Supp. 928 (E.D. Wash. 1992).

[26] *Id.*

[27] *Id.* at 930.

- 870 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

the broadcast, the fact that red apples were synonymous with Washington apples, and the understanding that disparagement claims concerned the product instead of the individual to determine the statements were made concerning the claimants' products.

In the instant case, NCC's statements were not "of and concerning" appellants or their products. As discussed in the previous section, the statements do not mention appellants or identify products or services of appellants beyond general statements on the risks of indoor tanning and tanning overall. Additionally, nothing in the content surrounding the statements mentioned appellants or indicated the statements were concerning appellants' specific goods and services. Appellants make several arguments involving internal communications within NCC to support their argument that NCC was attempting to target them, but these documents were unavailable to the public and could not lead readers of the website to understand NCC's statements were targeting appellants' services and products.

Furthermore, appellants' argument that they occupy the majority of the indoor tanning facilities in the Omaha and Lincoln areas is without merit. The website and the statements contained therein were available and applicable nationwide, and appellees' The Bed is Dead campaign describes itself as a statewide operation, which is not limited to the Omaha and Lincoln areas. Additionally, the statements were applicable to other indoor tanning options not included in appellants' market share analysis—including health clubs, apartments, and condominiums—and to outdoor tanning, as well.

Based upon all of the above, there were no genuine disputes as to any material facts on appellants' product disparagement claim and appellees were entitled to judgment as a matter of law. Thus, the district court did not err in granting appellees' motion and dismissing appellants' product disparagement claim.

- 871 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
JB & ASSOCS. v. NEBRASKA CANCER COALITION
Cite as 303 Neb. 855

## CONCLUSION

The district court did not err in finding that there were no genuine disputes as to any material facts and that appellees were entitled to summary judgment on appellants' defamation claim. Additionally, a product disparagement claim requires that the statement be "of and concerning" a claimant's goods or services, which can be determined from consideration of the circumstances surrounding the statement but also requires more than general, industry-wide allegations. Accordingly, there were no genuine disputes as to any material facts and the district court did not err in dismissing appellants' product disparagement claim.

AFFIRMED.